IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA § § § | |
| v. § § | |
| PATRICK MONTGOMERY, § BRADY KNOWLTON, and § GARY WILSON § § | Case No. 21-CR-00046-RDM |
| *Defendants* § | |

**DEFENDANTS' MOTION TO DISMISS
COUNTS THREE, FIVE, AND SIX OF THE THIRD SUPERSEDING INDICTMENT**

TO THE HONORABLE RANDOLPH D. MOSS, UNITED STATES DISTRICT JUDGE FOR THE DISTRICT OF COLUMBIA:

PATRICK MONTGOMERY, BRADY KNOWLTON, and GARY WILSON, the Defendants in the above styled and numbered cause, by and through their respective, undersigned counsel, respectfully requests this Court dismiss the following counts against them: Count Three as alleged against Mr. Montgomery; and, Counts Five and Six as alleged against Mr. Montgomery, Mr. Knowlton, and Mr. Wilson, all of which allege violations of 18 U.S.C. § 1752. In support thereof, they would show this Court the following.

**A. Counts Three Five and Six fail to state an offense because only the United States Secret Service restricts areas under Section 1752**

Counts Three, Five, and Six allege that the Defendants violated Section 1752 by committing various acts in what the Superseding Indictment characterizes as "restricted building and grounds" as that phrase is defined in Section 1752, namely, "the United States Capitol and its grounds." However, it does not allege that the United

1

States Secret Service (hereafter USSS) restricted that area under the statute.[1] The Government's position that any government entity may set a restricted area under Section 1752 finds no support in the statutory text, the case law, or the legislative history.

>As it relates here, Section 1752 states
>
>(a) Whoever—
>
>>(1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so;
>>
>>(2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or
>>
>>>\*\*\*
>>
>>(4) knowingly engages in any act of physical violence against any person or property in any restricted building or grounds;
>
>or attempts or conspires to do so, shall be punished as provided in subsection (b).

18 U.S.C. § 1752. The statute continues by giving relevant definitions:

>(c) In this section—
>
>>(1) the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—
>>
>>>(A) of the White House or its grounds, or the Vice President's official residence or its grounds;

---

[1] The government has conceded in other January 6 cases that the USSS did not set any restricted area on that day.

>   (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or
>
>   (C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance; and
>
> (2) the term "other person protected by the Secret Service" means any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection.

*Id.*

Penal statutes are to be strictly construed. *See United States v. Moore*, 613 F.2d 1029 (D.C. Cir. 1979). The plain meaning of Section 1752 unequivocally indicates that the USSS alone sets restricted areas. As shown above, all three definitions of "restricted building or grounds" in Section 1752(c)(1) concern the authority and actions of the USSS and not any other federal agency. Section 3056, concerning the "powers, authorities, and duties of United States Secret Service," confirms that Section 1752 is a statute directed to the USSS and not any other federal agency. *See* 18 U.S.C. § 3056(d).

Section 1752 defines "restricted building or grounds" to mean "any posted, cordoned off, or otherwise restricted area" in any of three scenarios set forth in the statute. 18 U.S.C. § 1752(c)(1). If an area is to be "restricted," some person or government entity must do the restricting. Areas do not restrict themselves. That statutory phrase's neighboring provisions, and common sense, reveal exactly which entity does the restricting. First, the restricting entity must be a government agency. If a Section 1752 restricted area could be set by any person, it would be illegal to enter an area

3

"cordoned off" around the White House by a homeless person using tinfoil traffic cones. Second, that government agency is the USSS because each of the three types of "restricted area" are patrolled and managed by that specific agency and no other.

That is why what little Section 1752 precedent there is prior to January 6 supports the Defendants while none supports the Government's interpretation. To be clear: before January 6, the government never prosecuted a Section 1752 case where the "restricted area" was set by any entity other than the USSS. *See United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005). In *Bursey*, the defendant there entered an area restricted by the USSS in advance of a political rally in South Carolina held by the President. *Id.* at 304. Reviewing the trial record, the Fourth Circuit observed that "the Secret Service designated an area near [the rally] as a restricted area." *Id.* It also noted that the "authorized persons" admitted into the area all "wore lapel pins issued by the Secret Service," meaning that the USSS was the entity that granted "lawful access" to the area. *Id.* Intending to protest the Iraq war, Bursey approached the restricted area with a megaphone. *Id.* A Secret Service Agent advised him he could not remain in that area. He was repeatedly advised thereafter of the same by multiple law enforcement agents over a twenty to twenty-five minute period. *Id.* Bursey was ultimately charged and convicted under Section 1752(a)(1).

One sufficiency argument Bursey raised on appeal was that, as a matter of *mens rea*, "he was never advised that the area was a federally restricted zone, *so designated by the Secret Service*." 416 F.3d at 308 (emphasis added). The Fourth Circuit rejected this argument. But not on the ground that Section 1752 restricted areas

4

need not be so restricted by the USSS. Instead, trial evidence showed that Bursey "understood the restriction to have been created by the Secret Service (as opposed to state or local law enforcement)." *Id.* Added the Fourth Circuit,

> [T]here was ample evidence that Bursey understood the area to have been restricted by the Secret Service, *and thus a federally restricted zone*. Specifically, Bursey testified that he believed that "at that event, October, when the President came to town, that the circumstances would be similar to his prior visits, where … the Secret Service comes in and preempts" local and state police. . . Bursey also acknowledged that, in protesting at two earlier visits to South Carolina by the incumbent President, he was advised in both instances that "the Secret Service had basically preempted the security arrangements" of local police.

*Bursey*, 416 F.3d at 309 (emphasis added).

The import of the Fourth Circuit's logic is clear. Had the Fourth Circuit even contemplated the idea that entities other than the USSS could restrict areas under Section 1752, the above reasoning would lack sense.

The government's anyone-may-restrict interpretation yields absurd results. *See United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 543 (1940) ("When [one possible statutory] meaning has led to absurd or futile results . . . this Court has looked beyond the words to the purpose of the act."); *see also Corley v. United States*, 556 U.S. 303, 317 (2009) (interpreting criminal procedure statute to avoid "absurdities of literalism"); *Ctr. for Biological Diversity v. E.P.A.*, 722 F.3d 401, 411 (D.C. Cir. 2013) (recognizing "'the long-standing rule that a statute should not be construed to produce an absurd result'" (quoting *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1068 (D.C. Cir. 1998)). Consider a Secret Service protectee who is "temporarily visiting" a place. *See* 18 U.S.C. § 1752(c)(1)(B). The Secret Service sets a "restricted area"

of one block around the protectee's presence. Under the Government's construction, any local police unit could decide to extend the "restricted area" to 20 blocks, without authorization from the Secret Service, the agency charged with protecting the person for whose sake the area is restricted in the first place. If any person were to enter the expanded area without "lawful authority" (from the local police? The Secret Service?) the same government that deemed the area limited to one block could also prosecute a person for entering block 20. The statute has simply never worked that way, as the Secret Service would readily attest.

At the very least, the Government's interpretation is not unambiguously correct on the face of the statute. In that case, the Court would look to legislative history. *See, e.g., BedRock Ltd., LLC v. United States*, 541 U.S. 176 (2004) ("Because we have held that the text of the statutory reservation clearly excludes sand and gravel, we have no occasion to resort to legislative history."). That history could hardly be clearer: the entire purpose of Section 1752 was to vest a specific federal agency with area-restricting authority which no agency then possessed, namely, the USSS. That way, the USSS would not need to "rely upon a patchwork of State laws and local ordinances and local officers" to restrict areas. *See* 116 Cong. Rec. 35,651 (1970) (statement of Sen. McClellan) (emphasis added); 116 Cong. Rec. 35,653 (1970) (statement of Sen. Hruska) (USSS does not "presently possess adequate Federal authority" to restrict areas). A Senate Judicial Committee report explicitly states that the purpose of Section 1752 was to vest the Secret Service specifically with the power to set

federal restricted areas. S. REP. NO. 91-1252 (1970), at 7 ("[a]lthough the Secret Service [was] charged with protecting the person of the President . . . there [was], at the present time, no Federal statute which specifically authorize[d] *them to restrict entry to areas* where the President maintains temporary residences or offices.") (emphasis added).

This is not just the Defendants' view. It is (or was) also the view of the Office of Legal Counsel of the Department of Justice. *See Citizens for Responsibility & Ethics in Wash. v. United* States, 922 F.3d 480, 483 (D.C. Cir. 2019) ("The authority of the OLC is nearly as old as the Republic itself."). In May 1995, the Secretary of the Treasury requested a legal opinion from the OLC on whether the Secretary had authority to restrict traffic on a segment of Pennsylvania Avenue in order to protect the President. *Authority of the Secretary of the Treasury to Order the Closing of Certain Streets Located Along the Perimeter of the White House*, 19 Op. Off. Legal Counsel 109 (1995). In crafting this opinion, OLC painstakingly examined the text of Section 1752 and its legislative history. *Id.* at 109–122. OLC determined that Section 1752 did, in fact, specify which government entity restricts areas under that statute. It is the Secret Service *via* the Treasury Department:

> Section 1752 plainly grants *the [Treasury] Secretary* authority to limit ingress and egress to an area where the President will be visiting *to create a security perimeter*, even when creating such a perimeter will require the closing of a public street to vehicular traffic.

Op. Off. Legal Counsel, p. 113 (emphasis added).

Counts Four, Five, and Six, accordingly, should be dismissed because the Government does not allege in the Superseding Indictment that the "restricted area" the Defendants entered was set by the USSS (nor can they).

**B. If the government's interpretation of § 1752 is applied, it is unconstitutionally vague as to the Defendants.**

If this Court concludes that the Superseding Indictment properly charges the Defendants with violating Section 1752 by crossing a boundary set by an agency other than the USSS, then the statute is unconstitutionally vague as applied to him.

Under the Government's interpretation of Section 1752, there is *no* notice, much less "fair notice," of the conduct proscribed *in this case*. As shown above, the text, legislative history, and common sense all point to the ordinary person's reasonable conclusion that the government agency that may restrict a person from entering an area in which there is a Secret Service protectee is . . . the Secret Service. Assuming the truth of the Government's allegations in this case, the Defendants saw police lined up outside the U.S. Capitol, whether they were U.S. Capitol Police or Metro Police. But if the text, legislative history and common sense inform an "ordinary person" that he violates Section 1752 by entering an area the *Secret Service* has restricted — as in *Bursey*, one of the handful of cases interpreting the statute — there is no similar notice in the statute that being on the wrong side of a police barricade is, independent of the Secret Service, in violation of that statute. None of the counts at issue in the Superseding Indictment allege postings on January 6 warning the Defendants and others that the Secret Service designated the area he entered as restricted. They do not allege any law enforcement officers notified the Defendants of

8

that fact. Nothing in Section 1752 so much as hints at the possibility that disobeying local law enforcement per se may result in liability under that federal statute, provided some USSS protectee lurks somewhere within the "restricted area."

The concern about vagueness-enabled arbitrary enforcement is manifested here. At a general level, the government's enforcement of Section 1752 against the Defendants is arbitrary because, prior to January 6, it had never prosecuted a violation of that statute with the allegation that the accused entered an area restricted by some government agency other than the USSS. Accordingly, the Government's election to put a new interpretation on the statute for a select group of related cases raises questions about discriminatory law enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983)) ("a penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it prohibits, and do so in a manner that does not invite arbitrary and discriminatory enforcement by which 'policemen, prosecutors, and juries ... pursue their personal predilections.'"). Those questions are only highlighted by the patently political nature of the circumstances of the offense, as well as the criminalization of the Defendants' First Amendment rights to political speech, assembly, and to petition the government for a redress of grievances. U.S. CONST. amend I; *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 500 (1982) (stricter scrutiny of vague statutes in the context of activities protected by the First Amendment).

Perhaps more serious is the specific arbitrariness here. Hundreds or perhaps thousands of other protesters "entered" the same "restricted area" as the Defendants

9

on January 6. Yet it is undisputed that many of those people have not been charged under Section 1752 like him. The Defendants have been singled out for reasons that do not concern the animating purpose of the Secret Service statute. Insofar as they both allege that the Defendant entered and remained in a "restricted area" set by an agency nowhere identified in the statute, Counts Three, Five, and Six are unconstitutionally vague.

### C. The rule of lenity dictates that ambiguities in Section 1752 be resolved in the Defendants' favor

Here, even if the Court decides that the Government's interpretation of Section 1752 is somehow formally correct — i.e., that any entity may set restricted areas under Section 1752(c) — it is plainly not unambiguous*ly* so. That is shown by the lack of any references in Section 1752 to agencies other than the USSS; the statute's legislative history, which similarly focuses exclusively on the USSS; the clear role that the USSS plays in all three definitions of "restricted buildings or grounds" in Section 1752(c); the indication in Section 3056 that the USSS enforces restricted areas in Section 1752; the lack of any case law supporting the government's position; and the common sense notion that if the USSS patrols and guards the restricted areas in Section 1752, it also sets them.

"The Supreme Court's message is unmistakable: Courts should not assign federal criminal statutes a 'breathtaking' scope when a narrower reading is reasonable." *United States v. Dubin*, 27 F.4th 1021, 1041 (5th Cir. 2022) (Costa, J., dissenting) (quoting *Van Buren v. United States*, ___ U.S. ___, 141 S. Ct. 1648, 1661, (2021)). Year after year, the Court continually reminds us of this principle. *See Van Buren*, 141 S.

Ct. at 1661 (holding that the Computer Fraud and Abuse Act should not be read in a way that "would attach criminal penalties to a breathtaking amount of commonplace ... activity"); *Kelly v. United States*, __ U.S. __, 140 S. Ct. 1565, 1568 (2020) (refusing to expand federal fraud statutes to "criminalize all [ ] conduct" that involves "deception, corruption, [or] abuse of power"); *Marinello v. United States*, __ U.S. __, 138 S. Ct. 1101, 1107, 1110 (2018) (rejecting expansive reading of tax obstruction law that would "transform every violation of the Tax Code into [a felony] obstruction charge"); *McDonnell v. United States*, 579 U.S. 550 (2016) (rejecting "expansive interpretation" of bribery law and refusing to construe it "on the assumption that the Government will 'use it responsibly'"); *Yates v. United States*, 574 U.S. 528, 540 (2015) (plurality opinion) (rejecting an "across-the-board ban on the destruction of physical evidence of every kind"); *Bond v. United States*, 572 U.S. 844, 863 (2014) (rejecting government's interpretation of chemical weapons ban when it would transform statute "into a massive federal anti-poisoning regime that reaches the simplest of assaults"); *see also Skilling v. United States*, 561 U.S. 358, 410–11 (2010) (adopting a "reasonable limiting construction" of honest-services wire fraud statute and "resist[ing] the Government's less constrained construction absent Congress' clear instruction otherwise"); *Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005) (exercising "restraint" in interpreting obstruction statute to avoid criminalizing "innocuous" acts of persuasion).

It cannot be overlooked that the Government here is once again attempting to expand the reach of a statute — this time, 18 U.S.C. § 1752 — and apply it in an

unprecedented manner using a never-before-used interpretation of the statute. In doing so, they ignore the rule that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Yates*, 574 U.S. at 547–48 (quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000), in turn quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)).

Because the Government's interpretation of Section 1752 is not unambiguously correct, the Court is required to resolve any ambiguities in the Defendants' favor by dismissing Counts Three, Five, and Six.

### D. The novel construction principle dictates against the government's interpretation, which would operate as an *ex post facto* law.

Because no court before January 6 ever construed Section 1752 to mean that agencies other than the USSS may set restricted areas under the statute, such a construction would be retroactively applied to the Defendants and would constitute an *ex post facto* law in violation of the Due Process Clause of the Fifth Amendment. *See Bouie*, 378 U.S. at 353.

The Defendants did not "violate the statute as it was written." *Id.* at 355. Section 1752 prohibits entry into an area restricted by the USSS. There is "nothing in the statute to indicate that it also prohibited the different act" of entering into an area restricted by the U.S. Capitol Police. *Id.* at 355. The interpretation given the statute by the [Government] . . . has not the slightest support in prior [Section 1752] decisions." *Id.* Accordingly, the novel construction principle dictates against the government's interpretation, which would operate as an *ex post facto* law in violation of the Due Process Clause of the Fifth Amendment.

WHEREFORE, PREMISES CONSIDERED, the Defendants respectfully requests this Court dismisses Counts Three, Five and Six of the Superseding Indictment against them.

Respectfully Submitted,

/s/ *John M. Pierce*
John M. Pierce
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
jpierce@johnpiercelaw.com

*Attorney for Patrick Montgomery*

RONALD SULLIVAN LAW, PLLC

by: /s/ *Ronald S. Sullivan Jr.*
RONALD S. SULLIVAN JR.
D.C.D.C. Bar ID 451518
rsullivan@ronaldsullivanlaw.com

1300 I Street NW, Suite 400 E
Washington, DC 20005
Telephone: (202) 935-4347
Fax: (617) 496-2277

MAYR LAW, P.C.

by: /s/ *T. Brent Mayr*
T. BRENT MAYR
D.C.D.C. Bar ID TX0206
bmayr@mayr-law.com

5300 Memorial Dr., Suite 750
Houston, TX 77007
Telephone:  713-808-9613
Fax:  713-808-9613

WAGNER PLLC

by: /s/ *Camille Wagner*
CAMILLE WAGNER
DC Bar No. 1695930
law@myattorneywagner.com

1629 K Street NW, Suite 300
Washington, DC 20006
202-630-8812

*Attorneys for Brady Knowlton*

PRICE BENOWITZ, LLP

by: /s/ *David B. Benowitz*  
DAVID B. BENOWITZ  
D.C.D.C. Bar ID 451557  
david@pricebenowitz.com

by: /s/ *Amy Collins*  
AMY COLLINS  
D.C.D.C. Bar ID 1708316  
amyc@pricebenowitz.com

409 Seventh Street, NW, Suite 200  
Washington, DC 20004  
Telephone: (202) 417-6000  
Fax: (202) 664-1331

*Attorneys for Gary Wilson*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this motion was sent to Counsel for the Government, Kelly Moran, Carolina Nevin, and Karen Rochlin and, on July 17, 2023, via CM/ECF and email.

/s/ T. Brent Mayr  
T. BRENT MAYR  
Attorney for Brady Knowlton