UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-cr-46-RDM |
| v. | : | |
| | : | |
| PATRICK MONTGOMERY, | : | |
| BRADY KNOWLTON, and | : | |
| GARY WILSON | : | |
| | : | |
| Defendants. | : | |

GOVERNMENT'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS COUNTS THREE, FIVE, AND SIX OF THE THIRD
SUPERCEDING INDICTMENT

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Response in Opposition to Defendants' Motion to Dismiss Counts Three, Five, and Six of the Indictment. ECF No. 152. As set out in greater detail below, defendants' motion to dismiss should be denied because: (1) Section 1752 does not require the government to prove that the restricted area was restricted at the Secret Service's direction; (2) Section 1752 is not unconstitutionally vague; and (3) the rule of lenity and the novel construction principle do not apply.

BACKGROUND

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was

halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

On January 6, 2021, at approximately 2:00 p.m., defendants Patrick Montgomery, Brady Knowlton, and Gary Wilson were outside the Capitol building on the west side. Knowlton confronted MPD officers who were making their way through the crowd and yelled at them saying, "You took an oath! You took an oath!" and "Are you our brothers? At approximately 2:02 p.m., Montgomery came at Officer Hodges from his side, grabbed Officers Hodges' baton, and tried to pull it away from him. Officer Hodges immediately started to fight back and the two of them went to the ground, at which time Montgomery kicked Officer Hodges in the chest.

About thirty minutes later, at 2:35 p.m., the defendants entered the Capitol through the Upper West Terrace door. After first going into the Rotunda for about two minutes, at around 2:40 pm., the defendants entered the Gallery Stairs and walked to the third floor. About one minute later, they entered the Senate Gallery hallway where they joined a group of rioters. Several rioters assaulted a USCP officer who was trying to prevent them from entering the Senate Gallery.

As a result of the assault, the USCP officers fled the hallway, and the defendants entered the Senate Gallery at about 2:44 p.m. The defendants exited the Senate Gallery at about 2:48 p.m.

Approximately two minutes later, they entered a second-floor hallway, where they confronted MPD officers, who prevented them—and other rioters— from walking further down the hallway. During this confrontation, Knowlton stated in substance to the officers: "All you gotta do is step aside. You're not getting in trouble. Stand down. For the love of your country." and "This is happening. Our vote doesn't matter, so we came here for change." Wilson stated in substance to the officers: "We came all the way from our jobs to do your job and the freaking senators' job."

At about 2:54 p.m., Wilson, Montgomery, and Knowlton left the building.

Based on their actions on January 6, 2021, Knowlton, Montgomery, and Wilson are charged with obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2), along with five misdemeanor charges. Montgomery is also charged with assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1), civil disorder in violation of 18 U.S.C. § 231(a)(3), and two additional misdemeanor charges. Additionally, Knowlton and Wilson are charged with theft offenses for stealing emergency hoods from the Senate Gallery.

## LEGAL STANDARD

An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). An indictment need not inform a

defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the Government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here.

Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). Criminal cases have no mechanism equivalent to the civil rule for summary judgment. *See e.g.*, *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) ("[M]otions for summary judgment are creatures of civil, not criminal trials"); *Yakou*, 428 F.3d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, No. 20-CR-40 (BAH), 2020 WL 6342948 at *5 (D.D.C. Oct. 29, 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence). Accordingly, dismissal of a charge does not depend on forecasts of what the Government can prove. Instead, a criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense. *See United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016). Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination.

Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *See e.g.*, *United States v. Bingert*, 605 F. Supp. 3d 111, 118 (D.D.C. 2022) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *United States v. McHugh*, No. 21-CR-453 (JDB), 2022 WL 1302880 at *2 (D.D.C. May 2, 2022) (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, No. 21-CR-454 (PLF), 2022 WL 823079 at *4 (D.D.C. Mar. 19, 2022) ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the <u>face</u> of the indictment and, more specifically, the <u>language used</u> to charge the crimes") (quoting *United States v. Sunia*, 643 F.Supp. 2d 51, 60 (D.D.C. 2009)).

## **ARGUMENT**

Defendants' attacks on Counts Three, Five, and Six are all without merit.

**I.  As Courts Have Uniformly Held, Section 1752 Does Not Require the Government to Prove that the Restricted Area was Restricted at the Secret Service's Direction.**

Defendants argue that Counts Three, Five, and Six should be dismissed for failure to state an offense because the U.S. Capitol Police, and not the Secret Service, designated the "restricted area" around the U.S. Capitol on January 6, 2021. ECF No. 152. However, nothing in the express language of Section 1752 requires that the U.S. Secret Service designate the "restricted area," and defendant's attempt to read such a requirement as implied in the statutory language goes against the common sense reading of the text and its legislative history, as all the courts in this district to address this issue, including this Court, have held.[1]

---

[1] *See, e.g.*, *United States v. Griffin*, 549 F. Supp. 3d 49, 52–58 (D.D.C. 2021) (denying motion to dismiss charge of violating 18 U.S.C. § 1752(a)(1)); *United States v. Mostofsky*, 21-CR-138 (JEB), 2021 WL 6049891, at *12–13 (D.D.C. Dec. 21, 2021) (18 U.S.C. § 1752(a)(1)); *United States v.*

Section 1752 provides in relevant part:

(a) Whoever—
    (1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so; [or]
    (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;
    …

(c) In this section—
    (1) [T]he term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—
        (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting;

18 U.S.C. § 1752. Section 1752 also defines "restricted building or grounds" to include any posted, cordoned off, or otherwise restricted area "of the White House or its grounds, or the Vice President's official residence or its grounds" or "of a building or grounds so restricted in conjunction with an event designated as a special event of national significance." 18 U.S.C. §§ 1752(c)(1)(A), (C).

The language of Section 1752 contains no express requirement that the "restricted buildings or grounds" must be restricted by USSS for there to be a violation of Section 1752. Nonetheless, defendants argue that such a requirement is implicit in the statutory language. ECF No. 152 at 3. However, because the plain language of the statute is clear and unambiguous, reading the implied requirement provided by the defendants is unwarranted. Even if one were to look

---

*Nordean*, 21-CR-175 (TJK), 2021 WL 6134595, at *18–19 (D.D.C. Dec. 28, 2021) (18 U.S.C. § 1752(a)(1)); *United States v. Andries*, 21-CR-93 (RC), 2022 WL 768684, at *12-16 (D.D.C. Mar. 14, 2022) (18 U.S.C. §§ 1752(a)(1) and (a)(2)); *United States v. Puma*, 21-CR-454 (PLF), 2022 WL 823079, at *13-16 (D.D.C. Mar. 19, 2022) (18 U.S.C. § 1752(a)(1) and (a)(2)); *United States v. Sargent*, No. 21-CR-258 (TFH), 2022 WL 1124817, at *9 (D.D.C. Apr. 14, 2022) *United States v. Bingert*, 605 F. Supp. 3d at 130-132 (18 U.S.C. § 1752(a)(1)).

beyond this plain language, the legislative history of Section 1752 also weighs against defendants' interpretation.

First, "absent from the text is any mention of a requirement that any specific entity must restrict or cordon off the area, let alone a requirement that only the Secret Service may be the restricting entity." *Andries*, 2022 WL 768684, at *14 (citation omitted). Section 1752 proscribes certain conduct in and around "any restricted building or grounds," *see* 18 U.S.C. § 1752(a), and it provides three definitions for the term "restricted buildings and grounds," *see* § 1752(c)(1), including "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting," § 1752(c)(1)(B). Through a cross-reference, Section 1752 makes clear—and the defendants do not appear to dispute—that "person[s] protected by the Secret Service" include the Vice President. § 1752(c)(2); *see* § 3056(a)(1). The proscribed conduct within a "restricted building or grounds" includes, as relevant here, knowingly and unlawfully entering or remaining, § 1752(a)(1), and knowingly and with intent to impede or disrupt government business, engaging in "disorderly or disruptive conduct" that "in fact, impedes or disrupts" "government business," § 1752(a)(2); and knowingly engaging in any act of physical violence against any person or property, § 1752(a)(4).

In short, Section 1752 "prohibits persons from knowingly entering without lawful authority to do so in any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting." *Wilson v. DNC Servs. Corp.*, 417 F. Supp. 3d 86, 98 (D.D.C. 2019), *aff'd*, 831 F. App'x 513 (D.C. Cir. 2020). Where, as here, the words of the statute are unambiguous, "the judicial inquiry is complete." *See Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation marks omitted). However, under defendants' interpretation of Section 1752, there is an additional, implied requirement unstated in

the statutory language above that any restricted area must be designated by USSS. There is no such requirement, nor is there any credible rationale why one should be inferred.

And while looking beyond the plain language is unwarranted here, *see United States v. American Trucking Associations*, 310 U.S. 534, 543 (1940) (stating that looking beyond clear statutory text is appropriate where the results would be absurd or demonstrably at odds with clearly expressed Congressional intent), the legislative history of Section 1752 in fact affirms the plain reading of the text that the defendants resist. *See Andries,* 2022 WL 768684, at *14 (finding that similar "extra-textual considerations at best do not support [defendant's] reading [of Section 1752] and at worst undermine it").  As the defendants acknowledge, when Section 1752 was first enacted in 1970, USSS was part of the Treasury Department, and this original version of the statute explicitly incorporated regulations promulgated by the Treasury Department governing restricted areas. *See United States v. Bursey*, 416 F.3d 301, 306-07 (4th Cir. 2005) (noting that definition of restricted area required interpreting Treasury regulations). Specifically, subsection (d) of Section 1752 gave authority to the Department of the Treasury, which oversaw USSS, to "prescribe regulations governing ingress or egress to such buildings and grounds and to posted, cordoned off, or otherwise restricted areas where the President is or will be temporarily visiting." Pub. L. 91-644, Title V, Sec. 18, 84 Stat. 1891-92 (Jan. 2, 1971). However, when Congress revised Section 1752 in 2006, it struck subsection (d) from the statute, eliminating the requirement that "restricted building or grounds" be necessarily defined or designated by USSS or any other particular law enforcement agency. Pub. L. 109-177, Title VI, Sec. 602, 120 Stat. 192 (Mar. 9, 2006). In 2012, Congress further reinforced this interpretation by adding the definitional subsection (c) cited above, which provides the current definition of "restricted building or grounds." Pub. L 112-98, Title I, Sec. 2, 126 Stat 263 (March 8, 2012). Contrary to the defendants' reading, the legislative

history shows that Congress deliberately excised any requirement that a restricted area depend on any definition or determination by USSS.

Both the plain language and legislative history of Section 1752 show that there is no requirement, express or implied, that an area be restricted by a particular law enforcement agency, as courts in this district have unanimously held. *See United States v. Grider*, --- F.Supp.3d ---, 2022 WL 3016775, at *7 (D.D.C. July 29, 2022) (collecting cases) (internal quotations omitted) ("[N]othing in the statutory text requires the Secret Service to be the entity to restrict or cordon off a particular area"); *Bingert*, 605 F. Supp.3d at 131 ("[D]efendants fashion a bizarre requirement, seemingly out of thin air: that only the Secret Service can designate an area as restricted [for the purposes of 18 U.S.C. § 1752]."); *United States v. Rhine*, No. 21-CR-687 (RC), 2023 WL 372044, at *11 (D.D.C. Jan. 24, 2023). Defendants' contention that these counts of the indictment are defective for this reason should be likewise rejected.

## II.     Section 1752 is Not Unconstitutionally Vague.

The defendants also raise various vagueness challenges to Section 1752(a)(2), all of which fail. As the defendants fails to acknowledge, Judges Friedman, Bates, Kelly, McFadden, and Cooper have all rejected vagueness challenges to 18 U.S.C. 1752(a)(1) and (a)(2). *Grider*, 2022 WL 3016775, at *7; *Puma*, 2022 WL 823079, at *3 ("This Court concludes that … 18 U.S.C. § 1752 [is] not unconstitutionally vague.") (Friedman, J.); *Bozell*, 2022 WL 474144, at *9 ("§ 1752 "is clear[,] gives fair notice of the conduct it punishes, and [does not] invite arbitrary enforcement."); *United States v. Nordean*, 579 F. Supp. 3d 28, 60 (D.D.C. 2021) (§ 1752(a)(1) and (a)(2) are "not unconstitutionally vague"); *Griffin*, 549 F. Supp. 3d at 57 ("This law is no trap awaiting the unwary."); *United States v. Caputo*, 201 F. Supp. 3d 65, 72 (D.D.C. 2016) ("18 U.S.C. § 1752(a)(1) is … not void for vagueness.") (Cooper, J.)

First, the defendants argue that the straightforward interpretation described above is unconstitutionally vague because the statute fails to provide no notice that crossing a barrier erected by an entity other than the Secret Service is criminal. A statue is vague where it (1) fails to give ordinary people fair notice of the conduct it punishes or (2) is so standardless that it invites arbitrary enforcement. *Johnson v. United States*, 576 U.S. 591, 595 (2015). Neither applies to Section 1752. As set out above, Section 1752 prohibits the defendant from knowingly engaging in certain conduct in "any posted, cordoned off, or otherwise restricted area, of … grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(a), (c)(1)(B).  As explained above, the statute is not vague: rather, it clearly does not require that the Secret Service restrict the area.  Defendants' apparent mistake of law about an interpretation of the statute contrary to its plain text does not make the statute vague.  *See United States v. Neely*, No. CR 21-642 (JDB), 2023 WL 1778198, at *4 (D.D.C. Feb. 6, 2023) (rejecting identical argument and observing, "there is no reasonable divergence of opinion"). As Judge McFadden held in *United States v. Griffin*, "[1752] does not invite arbitrary enforcement by criminalizing common activities or giving law enforcement undue discretion." 549 F. Supp. 3d 49, 57 (D.D.C. 2021). Therefore, Section 1752 is not unconstitutionally vague as to the identity of the restricting party.[2]

---

[2] Defendants' unsupported claim that the statute is vague because the government "had never prosecuted a violation of that statute with the allegation that the accused entered an area restricted by some government agency other than the USSS" (Mot. at 16) is wrong.  "Discretionary prosecutorial decisions cannot render vague as applied a statute that by its plain terms provides fair notice." *United States v. Caldwell*, 21-cr-28 (APM), 2021 WL 6062718, at *8 (D.D.C. Dec. 20, 2021); see also *United States v. Montgomery,* 21-cr-46 (RDM), 2021 WL 6134591, at *22 (D.D.C. Dec. 28, 2021) ("the presence of enforcement discretion alone does not render a statutory scheme unconstitutionally vague") (quoting *Kincaid v. District of Columbia*, 854 F.3d 721, 729 (D.C. Cir. 2017) (Kavanaugh, J.)).  The vagueness doctrine is directed at the notice that the statute itself provides, not the government's enforcement decisions.

Defendants also attack the charges brought under Section 1752(a)(2), "insofar as they both allege that the Defendant entered and remained in a "restricted area" set by an agency nowhere identified in the statute, Counts Three, Five, and Six are unconstitutionally vague." ECF No. 152 at 10. But the defendants ignore the explicit language of the Indictment, which alleges that the defendants each entered and remained "*in* a restricted building and grounds" (Count 5) and that defendant engaged in disorderly and disruptive conduct "*in* and within such proximity to" restricted grounds (Count 6). ECF No.23 (emphasis added). Thus, the Indictment alleges that the defendants were not just "within such proximity" to a restricted area but was in fact *within* a restricted area. "So whatever 'fuzzy boundary standard[]' that phrase may introduce is irrelevant here." *Nordean*, 579 F. Supp.3d at 60, n.16.[3] *See also*, *United States v. Griffith*, No. 21-CR-244, 2023 WL 1778192, at *3 (D.D.C. Feb. 6, 2023); *United States v. Egtvedt,* 21-CR-177, Dkt. Entry 93 at 13, n.2.

Judge Bates' decision rejecting the same vagueness challenge in *Neely* is instructive. As in *Griffith* and *Egtvedt,* Judge Bates first pointed out that the indictment alleged that the defendant was "in" the restricted area, not merely in proximity to it. *Neely*, 2023 WL 1778198, at *4. Moreover, Judge Bates found, the boundary-based vagueness argument failed because it did not "grapple with the mens rea element of the statute, which requires him to have acted "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions." *Id.* at *5 (citing *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489,

---

[3] While the Court should reject the vagueness claim based solely on the statute and the indictment, the government expects that the facts at trial will show that the defendants were within the restricted area, and so would clearly be on notice that their conduct violated the statute, regardless of their quibble with the "proximity" provision. "A [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applies to the conduct of others." *Nordean*, 579 F. Supp. 3d 28, at 57 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (cleaned up).

499 (1982) ("[A] scienter requirement may mitigate a law's vagueness ...."). Like Neely, the defendants "[do] not argue that description of the conduct regulated—disorderly conduct that disrupts government business—is vague." For this additional reason, the defendants' motion fails.

### III.   The Rules of Lenity and the Novel Construction Principle Do Not Apply.

As every other court to address this issue has concluded, the language of Section 1752(a) is unambiguous. Therefore, the Court need not resort to the rules of lenity and the novel construction principle. As Judge McFadden explained last year when rejecting nearly identical arguments that the rules of lenity and constitutional avoidance should apply as a result of Section 1752's purported ambiguity,

> [Defendant] invokes the doctrine of lenity and the "novel construction principle." Neither applies. Lenity is "a sort of junior version of the vagueness doctrine." It comes into frame only when a court has exhausted all canons of statutory construction and is left with only a coin flip to resolve "grievous ambiguity."
>
> As the Court has explained, Section 1752 is capacious, not ambiguous. [Defendant's] "ability to articulat[e] a narrower construction" of the statute does not trigger lenity. Nor has there been an "unforeseen judicial enlargement" of a longstanding criminal statute so that it operates like an ex post facto law. [Defendant] has allegedly violated a rarely charged statute, but that does not mean the *construction* of the statute unfairly blindsided him. There was no prevailing practice of courts foregoing or rejecting the interpretation that the Government now advances.

*Griffin*, 549 F. Supp. 3d at 57-58 (citations omitted).

Judges of this district have rejected attempts to cast Section 1752 as "ambiguous." "§ 1752 'is clear[,] gives fair notice of the conduct it punishes, and [does not] invite arbitrary enforcement.'" *United States v. Bozell*, No. 21-CR-216 (JDB), 2022 WL 474144, at *9 (D.D.C. Feb. 16, 2022) (citing *United States v. Nordean*, No. 21-cr-175 (TJK), 2021 WL 6134595, at *19 (D.D.C. Dec. 28, 2021)); *Griffin*, 549 F. Supp. 3d at 57 ("this law is no trap awaiting the unwary.")).

For the same reasons, Section 1752 is not an *ex post facto* law, as the defendants argues. As Judge Kollar-Kotelly found, rejecting an identical challenge in *Grider*:

> Grider has identified no precedent adopting his reading. Indeed, it is Defendant's reading of these statutes that appears to be novel." has concluded above, neither section 231 nor section 1752 are, for present purposes, susceptible of more than one meaning. The fact that Grider 'has allegedly violated a rarely charged statute,' or that the Government has applied the challenged provisions to conduct at the United States Capitol, 'does not mean that the construction of the[se] statute[s] unfairly blindsided him.

*Grider*, 2022 WL 3016775, at *8 (citing and quoting *Griffin*, 549 F. Supp. 3d at 58). Defendants' *ex post facto,* novel construction, and lenity arguments all fail because, in summary, they rest on the premise that Section 1752 suggests that the Secret Service must restrict the area; a premise that is not only incorrect but is without support in the statutory text.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that defendants' motion to dismiss Counts Three, Five, and Six be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC BAR NO. 481052

By:   */s/ Kelly E. Moran*
KELLY E. MORAN
Assistant United States Attorney
NY Bar No. 5776471
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
202-740-4690
kelly.moran@usdoj.gov

*/s/ Carolina Nevin*
CAROLINA NEVIN
Assistant United States Attorney
NY Bar No. 5226121

U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
202-803-1612
carolina.nevin@usdoj.gov