UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-46-RDM |
| v. : | |
| : | |
| PATRICK MONTGOMERY, : | |
| BRADY KNOWLTON, and : | |
| GARY WILSON, : | |
| : | |
| Defendants. : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S
### MOTION TO DISMISS INDICTMENT FOR VINDICTIVE PROSECUTION

The United States of America respectfully opposes Defendant Patrick Montgomery's Motion to Dismiss for Vindictive and Selective Prosecution. ECF No. 150. Defendant alleges that the government charged additional offenses as retribution for his refusal to enter into a plea agreement. However, the defendant did not reject any plea offers before the government filed an information. Nor did the defendant reject any plea offers before the government sought an indictment. The defendant did reject a plea offer before the second and third superseding indictment; however, neither of those instruments added any charges against him. Accordingly, there's no case whatsoever of retaliation as to Montgomery. His motion is factually and legally baseless and should be denied.

### FACTUAL BACKGROUND

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol

building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

On January 6, 2021, at approximately 2:00 p.m., defendants Patrick Montgomery, Brady Knowlton, and Gary Wilson were outside the Capitol building on the west side. Knowlton confronted MPD officers who were making their way through the crowd and yelled at them saying, "You took an oath! You took an oath!" and "Are you our brothers? At approximately 2:02 p.m., Montgomery came at Officer Hodges from his side, grabbed Officers Hodges' baton, and tried to pull it away from him. Officer Hodges immediately started to fight back and the two of them went to the ground, at which time Montgomery kicked Officer Hodges in the chest.

About thirty minutes later, at 2:35 p.m., the defendants entered the Capitol through the Upper West Terrace door. After first going into the Rotunda for about two minutes, at around 2:40 pm., the defendants entered the Gallery Stairs and walked to the third floor. About one minute later, they entered the Senate Gallery hallway where they joined a group of rioters. Several rioters assaulted a USCP officer who was trying to prevent them from entering the Senate Gallery.

As a result of the assault, the USCP officers fled the hallway, and the defendants entered the Senate Gallery at about 2:44 p.m. The defendants exited the Senate Gallery at about 2:48 p.m. Approximately two minutes later, they entered a second-floor hallway, where they confronted MPD officers, who prevented them—and other rioters— from walking further down the hallway. During this confrontation, Knowlton stated in substance to the officers: "All you gotta do is step aside. You're not getting in trouble. Stand down. For the love of your country." and "This is happening. Our vote doesn't matter, so we came here for change." Wilson stated in substance to the officers: "We came all the way from our jobs to do your job and the freaking senators' job."

At about 2:54 p.m., Wilson, Montgomery, and Knowlton left the building.

## PROCEDURAL BACKGROUND

On January 13, 2021, defendant Patrick Montgomery was charged by complaint for his actions on January 6, 2021, when large crowds breached the U.S. Capitol Building (hereinafter "the Capitol") as Congress convened a Joint Session to certify the Electoral College vote in the 2020 Presidential Election. (ECF No. 1, dated 01/13/2021) About three months later, on April 1, 2021, Brady Knowlton was also charged by complaint, for his actions on January 6, 2021. (ECF No. 1, dated 04/01/2021) Shortly thereafter, the Grand Jury returned an indictment charging both Knowlton and Montgomery—who communicated before, during and after January 6—as codefendants. Knowlton and Montgomery are charged with Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), along with five misdemeanor charges. Montgomery is also charged with Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1), Civil Disorder in violation of 18 U.S.C. § 231(a)(3), and two additional misdemeanor charges. (ECF No. 23). On or about June 17, 2021, the government conveyed a plea offer to Montgomery; under such a plea offer, the defendant would plead guilty to two felonies - Count 1 (assaulting, resisting, or impeding certain officers) and Count 10 (obstruction of an official proceeding). *See* Plea Agreement Letter, Attachment 1. The defendant did not choose to plead guilty to Counts One and Ten, and plea negotiations ended. On December 1, 2021, the government filed a superseding indictment against Montgomery and his co-defendant, Knowlton, which modified certain language about the Vice President and Vice President-elect. On August 19, 2022, the government filed a third superseding indictment charging Knowlton and Gary Wilson of Theft of Government Property, in violation of 18 U.S.C. § 641. No charges were added against Montgomery in the third superseding indictment.

**ARGUMENT**

The standard for a motion to dismiss for vindictive prosecution is high, and the defendant does not make out even a prima facie case. The law is settled that the government is not beholden to its initial charging decision; nor does the early plea offer providing the benefits of a swift resolution of the case set the outer bounds for the charges the government can ultimately bring. As the government prepares for trial and the evidence crystallizes, it is well within its rights to revisit its charging decision and determine whether additional charges were warranted. Here, the additional count clearly was.

Even if the defendant were to establish a presumption of vindictiveness, his motion would fail. Multiple objective reasons support the government's decision to indict, including (1) the proceedings in numerous January 6th trials, which occurred after the initial plea offer was made; and (2) the strength of the evidence of the defendant's corrupt intent. Each is more than enough to make the "minimal" showing that the defendant was not indicted "solely" to punish him for exercising a legal right. *Meadows*, 867 F.3d at 1312; *Goodwin*, 457 U.S. at 380 n.11.

"Prosecutorial vindictiveness' is a term of art with a precise and limited meaning." *Meyer*, 810 F.2d at 1245 (citing *Goodwin*, 457 U.S. at 372). The doctrine "precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a criminal prosecution . . ." *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011). Prosecutors have "broad discretion to enforce the law, and their decisions are presumed to be proper absent clear evidence to the contrary." *Slatten*, 865 F.3d at 799 (citing *United States v. Armstrong*, 517 U.S. 456, 464 (1996)). To succeed on a claim of vindictive prosecution, a defendant must show "that the increased charge was 'brought *solely* to "penalize" [him] and could

not be justified as a proper exercise of prosecutorial discretion.'" *Id.* (quoting *Goodwin*, 457 U.S. at 380 n.12) (emphasis in *Slatten*).

There are two ways a defendant may make this showing: "through objective evidence showing actual vindictiveness, or through evidence 'indicat[ing] a realistic likelihood of vindictiveness,'" which gives rise to a presumption that the government must then attempt to rebut." *Id.* (quoting *Meyer*, 810 F.2d at 1245). "The mere possibility that [a] second indictment was vindictively motivated does not suffice." *United States v. Gary*, 291 F.3d 30, 34 (D.C. Cir. 2002). If defendant's evidence raises a presumption, the government may then overcome it "with 'objective information in the record justifying the increased sentence [or charges].'" *Maddox v. Elzie*, 238 F.3d 437, 446 (D.C. Cir. 2001) (quoting *Goodwin*, 457 U.S. at 374). "That burden is 'admittedly minimal -- any objective evidence justifying the prosecutor's actions will suffice.'" *Meadows*, 867 F.3d at 1312 (quoting *Safavian*, 649 F.3d at 694)). "To prove actual vindictiveness requires objective evidence that the prosecutor's actions were designed to punish a defendant for asserting his legal rights. Such a showing is normally exceedingly difficult to make.'" *Gary*, 291 F.3d at 34 (quoting *Maddox*, 238 F.3d at 446).

The second route—identifying evidence establishing a "realistic likelihood of vindictiveness"—requires "something more" than an increase in charges that followed the exercise of his constitutional or statutory rights. *Meadows*, 867 F.3d at 1313; *see also Safavian,* 649 F.3d at 692 ("[A] prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the pretrial context"). This principle applies even where the evidence supporting the new charge was in the government's possession at the time of the initial indictment. "An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution."

*Goodwin*, 457 U.S. at 380. Even where the government has full knowledge of the facts, it can initially exercise its discretion to bring lesser charges." *Slatten*, 865 F.3d at 800. And, as the Supreme Court has observed, "a prosecutor may"—as part of a plea agreement—"forgo legitimate charges already brought in an effort to save the time and expense of trial." *Goodwin,* 457 U.S. at 380. The converse is likewise true: "a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." *Id*.

In the pretrial context, prosecutorial vindictiveness claims based on the addition of charges rarely succeed. "A defendant must show that the prosecutor's action was 'more likely than not' attributable to vindictiveness." *Safavian*, 649 F.3d at 692 (quoting *Gary*, 291 F.3d at 34) (quoting *Alabama v. Smith*, 490 U.S. 794, 801 (1989))). This is a difficult showing to make in a pretrial posture, where "'the prosecutor's assessment of the proper extent of prosecution may not have crystallized,' so an increase in charges may be the result of additional information or further consideration of known information, rather than a vindictive motive." *Slatten*, 865 F.3d at 799 (quoting *Goodwin*, 457 U.S. at 381). Moreover, the "routine exercise of many pre-trial rights also weakens any inference of vindictiveness, *i.e.*, that a prosecutor would retaliate simply because a defendant sought a jury trial or pleaded an affirmative defense." *Id.* In addition, "'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *Meadows*, 867 F.3d at 1313 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Thus, in the pretrial context, "there must be something more" than an increase in charges following the exercise of rights "for a presumption to arise." *Id.* (citation omitted).

In *Goodwin,* the Supreme Court addressed a situation where the government initially charged a defendant with misdemeanors and then added a felony charge after the defendant requested a jury trial. *Goodwin*, 457 U.S. at 370. The Court declined to apply a presumption of vindictiveness. It explained, "[t]here is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution *or he simply may come to realize that information possessed by the State has a broader significance.*" *Id.* at 381 (emphasis added). The Court found that

> the timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted. A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher*, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

*Id.* at 381-82. "[T]he mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified." *Id.* at 382-83. The Court thus declined to presume vindictiveness simply because the government brought additional or greater charges after the defendant made a pretrial demand for a jury trial. *Id.* at 384.

Defendant's motion establishes neither actual vindictiveness nor a realistic likelihood of vindictive prosecution. The defendant fails to point to either objective evidence of actual vindictiveness or evidence indicating a realistic likelihood of vindictiveness. He therefore cannot establish a presumption of vindictiveness, and his motion must fail.

Defendant identifies no direct evidence that the government acted "solely" to punish him for exercising a legal right. *Goodwin*, 457 U.S. at 380 n.11. His conclusory assertions, including

that the government's charging decision was punishment "for declining to accept the government's plea offer," are not evidence. ECF No. 150 at 9.

Defendant argues that because the government's superseding indictment was not based on new evidence, it is "presumptively (and, in fact, plainly) retaliatory" (ECF 150 at 5). However, his arguments are based in a faulty understanding of a Statement of Facts in support of a criminal complaint.[1] And, defendant fails to acknowledge that this argument was plainly rejected by the Supreme Court in *Goodwin*. *Goodwin* at 457 U.S. at 381-82 ("The prosecutor…simply may come to realize that information possessed by the State has a broader significance… An initial decision should not freeze future conduct.").

In *Goodwin*, the defendant originally was charged with misdemeanors; after he exercised his right to go to trial, he was indicted on felony charges. The observations that led the Supreme Court to reject Goodwin's vindictiveness claim are equally dispositive of this defendant's motion. As in *Goodwin,* "the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." *Id.* at 382. Such was the case here. The government first charged the defendant with misdemeanors, and these charges were brought within days of the January 6, 2021 attack on the Capitol. When the government learned more about the defendant's conduct, evidence of his conduct was presented to a Grand Jury who chose to indict the defendant on felony charges. The government later made a felony plea offer to the defendant,

---

[1] Defendant makes much of the fact that the Statement of Facts was never "supplemented, amended, or altered." (ECF No. 150 at 2.) The Statement of Facts is, essentially, an affidavit supporting a criminal complaint, which is submitted to a magistrate judge to establish probable cause for an arrest warrant. Fed. R. Crim. P. 4(a). There is no requirement that Statements of Facts be updated throughout the pendency of a criminal case. *See* Fed. R. Crim. P. There is no requirement that a new Statement of Facts be issued with an information. *See* Fed. R. Crim. P. 7. And, when the government seeks the return of indictment, it presents evidence to the grand jury— and it is that presentation, not the original Statement of Facts, which establishes probable cause.

which gave consideration for a prompt acceptance of responsibility. This plea was rejected, and no additional charges have been brought against Montgomery in the two intervening years.

*Goodwin* recognized that, early in a case, before extensive trial preparation is complete, "the prosecutor's assessment of the proper extent of prosecution may not have crystallized,' so an increase in charges may be the result of additional information or *further consideration of known information*, rather than a vindictive motive." *Slatten*, 865 F.3d at 799 (quoting *Goodwin*, 457 U.S. at 381) (emphasis added). In this case, the government's explanation of the additional charge closely mirrors the Court's reasoning in *Goodwin*. It was entirely appropriate for the government's assessment of the case to crystallize, or evolve, as it further considered the information it possessed, especially considering the short time between the defendant's initial charging in January 2021, and his subsequent indictment in April 2021.

Recently, this Court rejected a prosecutorial vindictiveness claim based on the filing of additional charges after the defendants elected to go to trial, relying on *Goodwin. United States v. Allgood,* 610 F. Supp. 3d 239 (D.D.C. July 7, 2022). In *Allgood,* five days after the defendants exercised their speedy trial rights and the court set a trial date, the government notified defendants of its intent to bring additional charges, including mandatory minimum terms of incarceration. *Id.* at 249. Soon thereafter, the government superseded with additional charges providing for a twenty-year mandatory minimum sentence. *Id.* Defendants moved to dismiss, arguing that the government acted vindictively to punish them for asserting their speedy trial rights. *Id.* at 246. They argued that they had established a "realistic likelihood" of vindictiveness based on (1) the timing of the government's decision to supersede, (2) the fact that the government "long knew" the information justifying the additional charges, (3) the lack of a prior warning about the additional charges, and

(4) the absence of a nexus to plea negotiations.² This Court found defendants' argument "at odds" with *Goodwin,* where the same facts were present, but did not create a presumption of vindictiveness. *Id.* at 249. *See also United States v. Simmons,* No. 18-cr-344 (EGS), 2022 WL 1302888, at *18 (D.D.C. May 2, 2022) (rejecting prosecutorial vindictiveness claim where "there is 'no fact beyond the mere sequence of events to support any presumption of improper motivation.'") (citing *United States v. Mills*, 925 F.2d 455, 463 (D.C. Cir. 1991), *overruled on other grounds by United States v. Mills,* 964 F.2d 1186, 1193 (D.C. Cir. 1992)).

The facts here are even less compelling than those found unpersuasive in *Allgood* and which the Supreme Court held did not establish a presumption of vindictiveness in *Goodwin.* In *Goodwin,* the prosecutors added the felony charges approximately six weeks after the defendant exercised his right to a jury trial; in *Allgood,* only five days elapsed between defendants' exercise of their rights and the government notifying them of its intent to supersede. *Goodwin,* 457 U.S. at 371, *Allgood,* 610 F. Supp. 3d at 249. Here, the government's plea offer expired on July 21, 2021; the government had proceeded with felony charges against Montgomery before he rejected the plea offer. And indeed, the government has not charged Montgomery with any new offense since he rejected the plea offer: it added no charges in the second superseding indictment, ECF No. 74 and added a single charge, against Montgomery's co-defendants, in the third superseding indictment. ECF No. 115. Thus, Montgomery has faced no adverse charging decisions after his decision not to plead guilty, and he utterly fails to explain how the decision to add a charge against his co-defendants amounts to a vindictive prosecution of *him*.

---

² The *Allgood* defendants also made an "actual vindictiveness" argument, based on a supervisor's comments to a defense attorney. *Allgood,* 610 F. Supp. 3d at 246-47. Judge Moss rejected this claim, finding that defendants failed to show that the supervisor's comments were motivated by defendants' assertion of their speedy trial rights. *Id.* at 247-48.

> On the other factors considered in *Allgood* and *Goodwin*, this case is nearly identical:
>
> > In both cases, moreover, the government brought additional charges against the defendants based on facts that were known before they invoked their rights. *See id.* at 371 n.2 (listing the prosecutor's reasons for bringing increased charges). In neither case did the government warn the defendants of the possibility that they might face increased charges if they chose to go trial. And, in neither case did the government decide to bring additional charges as part of a plea negotiation; in *Goodwin*, the defendant emphasized that "the additional charge . . . was brought outside the context of plea negotiation." *Id.*

*Allgood,* 610 F. Supp. 3d 239 at 249-250. The court thus concluded, "as the Supreme Court did in *Goodwin*," that the circumstances there did not suggest a realistic likelihood of prosecutorial vindictiveness. *Id.* Here, the Court should thus find the same.

Nor does *Meyer*, a rare case recognizing a presumption of vindictiveness pre-trial, support defendant's claims. The holding in *Meyer* is both readily distinguishable and "limited to the precise circumstances of this case." *Meyer,* 810 F.2d at 1248; *see also Meadows*, 867 F.3d at 1314 ("[T]he facts in *Meyer* were unusual."). *Meyer* arose out of the arrest of 200 defendants, each of whom had the chance to pay $50 to resolve his or her charges. *Id.* at 1243. Those who chose to go to trial were charged with an additional crime, as they learned at their arraignments (all of which took place on three days). *Id.* at 1244. This Court recently had "little difficulty concluding that *Meyer* [was] inapposite" in *Allgood,* 610 F. Supp. 3d 239 at 250, and similar reasons distinguish *Meyer* here. For example, here there is no allegation of disparate treatment (*i.e.*, unlike in *Meyer*, defendant does not and cannot allege that all non-pleading January 6th defendants are charged with additional crimes); the government has not offered to drop the felony charge; the case does not involve the "simplicity and clarity of both the facts and law underlying [the] prosecutions" present in *Meyer,* and the felony charge was not added to avoid the "annoyance and expense" of a "potentially drawn out trial." *Meyer,* 810 F.2d at 1246-47.  Finally, in *Meyer,* the government

"never attempted to rebut the presumption." *Id.* at 1249. Assuming such a presumption exists here, the government does (see Section I.c., *infra*).

Defendant's indictment does not create an appearance of vindictiveness. As Judge McFadden explained when denying a similar motion in *United States v. Speed*, there is nothing "mysterious" or "startling" (ECF 97 at 5, 7) about the government's addition of a 1512(c)(2) charge: "Further rebutting any presumption of vindictiveness is the Government's pattern of conduct in prosecuting January 6th cases. I think it's fair to say the Government has vigorously prosecuted Capitol rioters and, as the Government notes, it has superseded with more serious charges in many cases in a similar posture. I'm looking to *United States versus Barnett*, No. 21-CR-238; *United States versus Miller*, No. 21-CR-119; *United States versus Irwin*, No. 21-CR-589, all from this district. In other words, the Government's decision to bring an obstruction count here is in keeping with its treatment of similar January 6th-related cases." *United States v. Speed*, 22-cr-244 (TNF) 3/2/2023 Tr. At 9.

The defendant's argument that the addition of Count 10 is particularly weak because the defendant was charged with obstruction of an official proceeding before his plea offer had expired. On June 18, 2021, Brady Knowlton filed a motion to dismiss Count Ten of the indictment (ECF No. 39), which charges Montgomery and him with obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2) and aiding and abetting. On June 23, 2021, Montgomery filed a motion to adopt and join the motion filed by Knowlton and requested the right to file additional motions. (ECF No. 40). Both Knowlton and Montgomery had been charged with 18 U.S.C. § 1512(c)(2) for two months by the time the government's plea offer was made; in fact, the plea offer included a plea to that very count of the indictment. *See* Attachment 1. Accordingly, it cannot be argued that "in this case, significantly, the new "obstruction of an official proceeding" allegation

is presumptively (and, in fact, plainly) retaliatory, given that the charge is based on no new information or evidence whatsoever." ECF No. 150 at 5.

Defendant has not established a presumption of vindictiveness.

**Even Had Defendant Established a Presumptiveness of Vindictive Prosecution, He Would Not Prevail**

Even if the defendant had met his burden to establish a presumption of vindictiveness, the government could readily overcome that presumption with "'objective information in the record justifying the increased sentence [or charges].'" *Maddox*, 238 F.3d at 446 (quoting *Goodwin*, 457 U.S. at 374). The verdicts and opinions issued in the many obstruction cases involving January 6 defendants have since shaped the government's understanding of the type of evidence that persuades factfinders at trial. In another example of the District Court rejecting a claim of retaliatory prosecution for the addition of a felony charge pretrial, Judge McFadden acknowledged these developments as "justify[ing] the Government's decision": "Notably, this obstruction of an official proceeding charge is a relatively obscure charge…it is not surprising that the Government's approach to this charge has evolved over the last few months as a number of the January 6th cases have moved through the system." *United States v. Speed*, 22-cr-244 (TNF) 3/2/2023 Tr. At 8. (This fact is more than enough to satisfy the "minimal" burden on the government, demonstrating that the new charge was not brought "solely" to penalize Speed. *Meadows*, 867 F.3d at 1312 (quoting *Safavian*, 649 F.3d at 694)).

The government's decision, however, need not rest on developments that post-date the original charging decision; the prosecutors also "simply may come to realize that information possessed by the State has a broader significance." *Goodwin,* 457 U.S. at 381. Here, the evidence of defendant's corrupt intent is compelling. On January 6, 2021, he violently forced his way into and through the U.S. Capitol and assaulted Police Officer Hodges. After they left the Senate

Gallery, Montgomery and Knowlton confronted officers inside the Capitol in a hallway near Senate Majority Leader Schumer's office. On video, both Knowlton and Montgomery direct officers to move out of the way. Knowlton tells the officers, "We don't wanna push through there. We do not wanna push through there." Knowlton also tells the officers, "This is happening. Our vote doesn't matter, so we came here for change."

This strong evidence of defendant's corrupt intent, which further "crystallized" as the government prepared for trial, demonstrates that the new charge does not "solely" result from the defendant's exercise of a protected legal right but reflects "the prosecutor's normal assessment of the societal interest in prosecution." *Goodwin*, 457 U.S. at 380 n.11; s*ee, e.g.*, *Meadows*, 867 F.3d at 1315 (observing that "the government's evidence regarding the severity of Meadows' fraudulent conduct—which continued for approximately a year, involved two separate false filing schemes, and resulted in approximately 49 false claims—was sufficient to satisfy this court's admittedly minimal requirement of any objective evidence") (internal quotation marks and citations omitted); *Gary*, 291 F.3d at 34 (government's effort to prevent defendant from "escape[ing] punishment for her criminal conduct" not vindictive).

## CONCLUSION

For the foregoing reasons, the Court should deny defendant's motion.

                                              Respectfully submitted,

                                              MATTHEW M. GRAVES
                                              UNITED STATES ATTORNEY
                                              DC BAR NO. 481052

By:    */s/ Kelly E. Moran*
        KELLY E. MORAN
        Assistant United States Attorney
        NY Bar No. 5776471
        U.S. Attorney's Office for the District of Columbia

601 D Street, N.W.
Washington, D.C. 20530
202-740-4690
kelly.moran@usdoj.gov

*/s/ Carolina Nevin*
CAROLINA NEVIN
Assistant United States Attorney
NY Bar No. 5226121
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
202-803-1612
carolina.nevin@usdoj.gov