**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-46-RDM** |
| **v.** | : | |
| | : | |
| **PATRICK MONTGOMERY,** | : | |
| **BRADY KNOWLTON, and** | : | |
| **GARY WILSON,** | : | |
| | : | |
| **Defendants.** | : | |

**STATEMENT OF FACTS FOR STIPULATED TRIAL**

The parties, by their undersigned counsel, hereby submit this Statement of Facts for the Stipulated Trial.

I.      **ELEMENTS**

**COUNT ONE: 18 U.S.C. § 111(a)(1)**

The United States and defendant MONTGOMERY agree to the following:

The essential elements of the offense of assaulting, resisting, or impeding certain officers, in violation of Title 18, United States Code, Section 111(a)(1), each of which the government must prove beyond a reasonable doubt, are:

1.  The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer D.H., an officer from the Metropolitan Police Department.

2.  The defendant did such acts forcibly.

3.  The defendant did such acts voluntarily and intentionally.

4.  Officer D.H. was assisting officers of the United States who were then engaged in the performance of their official duties.

5.  The defendant made physical contact with Officer D.H., or acted with the intent to

commit another felony. For purposes of this element, "another felony" refers to the offense charged in Count Ten.

**COUNT FIVE: 18 U.S.C. § 1752(a)(1)**

The United States and defendant KNOWLTON agree to the following:

The essential elements of the offense of entering and remaining in a restricted building or grounds, in violation of Title 18, United States Code, Section 1752(a)(1), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant entered or remained in a restricted building or grounds without lawful authority to do so.

2. The defendant did so knowingly.

**COUNT TEN: 18 U.S.C. § 1512(c)(2) and 2**

The United States and defendants MONTGOMERY, KNOWLTON, AND WILSON agree to the following:

The essential elements of the offense of obstruction of an official proceeding and aiding and abetting, in violation of Title 18, United States Code, Section 1512(c)(2) and 2, each of which the government must prove beyond a reasonable doubt, are:

1. The defendants attempted to or did obstruct or impede an official proceeding;

2. The defendants intended to obstruct or impede the official proceeding;

3. The defendants acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and

4. The defendants acted corruptly.

The government further alleges that the defendants aided and abetted others in committing obstruction of an official proceeding. To satisfy its burden of proof in proving that

the defendants aided and abetted others in committing this offense, the government must prove the following beyond a reasonable doubt:

1. Others committed obstruction of an official proceeding by committing each of the elements of the offense charged;

2. The defendants knew that obstruction of an official proceeding was going to be committed or was being committed by others;

3. The defendants performed an act or acts in furtherance of the offense;

4. The defendants knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding; and

5. The defendants did that act or acts with the intent that others commit the offense of an obstruction of an official proceeding.

## **COUNT ELEVEN: 18 U.S.C. § 641**

The United States and defendant WILSON agree to the following:

The essential elements of the offense of theft of government property, in violation of Title 18, United States Code, Section 641, each of which the government must prove beyond a reasonable doubt, are:

1. The defendant stole, took, embezzled, purloined, or knowingly converted to his own use an escape hood;

2. The escape hood was property of some value belonging to the United States or any of its departments or agencies; and

3. The defendant intended to deprive, without right, the United States government of the use or benefit of the escape hood.

II.     <u>**STATEMENT OF OFFENSE**</u>

If the case proceeded to trial, defendants MONTGOMERY, KNOWLTON, and WILSON each individually agree that the government would have elicited the following evidence:

### *The Attack at the U.S. Capitol on January 6, 2021*

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2.      On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol Building itself were restricted by the U.S. Capitol Police due, in part, to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day. The United States Secret Service, tasked with protecting the Vice President and his immediate family at the Capitol complex, was informed in advance of the restricted perimeter.

3.      On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session is set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18 and requires a deliberate and legally prescribed assessment of ballots, lists, certificates, and, potentially, written objections. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice

President Mike Pence was present and presiding, first in the joint session, and then in the Senate Chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol Building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol Building and the proceedings underway inside.

5.      At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and through officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and the United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00

p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Authenticity of Stipulated Trial Exhibits*

8.      Stipulated Trial Exhibit 1 is the body-worn camera footage of Metropolitan Police Department (MPD) Officer D.H. The footage is authentic, in that it is what it purports to be. It bears a time and date stamp, which is correct.

9.      Stipulated Trial Exhibit 2 is United States Capitol Police (USCP) CCTV footage depicting the Upper West Terrace Stairs on Capitol grounds. The footage is authentic, in that it is what it purports to be. It bears a time and date stamp, which is correct.

10.     Stipulated Trial Exhibit 3 is United States Capitol Police (USCP) CCTV footage depicting the Upper West Terrace Door of the Capitol Building. The camera looks toward the exterior of the building. The footage is authentic, in that it is what it purports to be. It bears a time and date stamp, which is correct.

11.     Stipulated Trial Exhibit 4 is Senate CCTV footage (Camera 6) depicting the Senate Gallery. The footage is authentic, in that it is what it purports to be. It bears a time and date stamp, which is correct. It has been altered, in that MONTGOMERY, KNOWLTON, and WILSON are circled, a silver item in KNOWLTON's hand is highlighted, and a black bag slung over WILSON's shoulder is highlighted. Otherwise, it has otherwise not been altered in any way.

12.     Stipulated Trial Exhibit 5 is Senate CCTV footage (Camera 5) depicting the Senate Gallery. The footage is authentic, in that it is what it purports to be. It bears a time and date stamp, which is correct. It has been altered, in that MONTGOMERY, KNOWLTON, and WILSON are circled, a silver item in KNOWLTON's hand is highlighted, and a black bag slung over WILSON's shoulder is highlighted. Otherwise, it has otherwise not been altered in any way.

13.     Stipulated Trial Exhibit 6 is footage from an individual depicting the Senate Gallery. The footage is authentic, in that it is what it purports to be. It bears a time and date stamp, which is correct. It has been altered, in that KNOWLTON and WILSON are circled. Otherwise, it has otherwise not been altered in any way.

14.     Stipulated Trial Exhibit 7 is USCP CCTV footage depicting the Ohio Clock Corridor. The footage is authentic, in that it is what it purports to be. It bears a time and date stamp, which is correct. It has been altered, in that MONTGOMERY, KNOWLTON, and WILSON are circled, a silver item on the floor is highlighted, and a black bag on a piece of furniture is highlighted. Otherwise, it has not been altered in any way.

15.     Stipulated Trial Exhibit 8 is the body-worn camera footage of MPD Officer R.D. The footage is authentic, in that it is what it purports to be. It bears a time and date stamp, which is correct. It has been altered, in that MONTGOMERY, KNOWLTON, and WILSON are circled. Otherwise, it has not been altered in any way.

16.     Stipulated Trial Exhibit 9 is the body-worn camera footage of MPD Officer M.H. The footage is authentic, in that it is what it purports to be. It bears a time and date stamp, which is correct. It has been altered, in that MONTGOMERY, KNOWLTON, and WILSON are circled. Otherwise, it has not been altered in any way.

17.     Stipulated Trial Exhibit 10 is the body-worn camera footage of MPD Officer C.R. The footage is authentic, in that it is what it purports to be. It bears a time and date stamp, which is correct. It has been altered, in that MONTGOMERY, KNOWLTON, and WILSON are circled, and it includes a transcript, contained in Appendix A. The transcription is accurate. Otherwise, it has not been altered in any way.

18.     Stipulated Trial Exhibit 11 is USCP CCTV depicting the interior hallway immediately inside the Upper West Terrace Door of the Capitol Building. The camera looks toward the interior of the building. The footage is authentic, in that it is what it purports to be. It bears a time and date stamp, which is correct.

19.     Stipulated Trial Exhibit 12 is a screenshot of video footage from an individual showing the doorway from the hallway immediately inside the Upper West Terrace Door on the first floor of the Capitol Building. The screenshot of the footage is authentic, in that it is what it purports to be. It has been altered, in that MONTGOMERY and WILSON are circled. Otherwise, it has not been altered in any way.

20.     Stipulated Trial Exhibit 13 is USCP CCTV depicting the hallway near Senate Minority Leader Charles Schumer's office. The footage is authentic, in that it is what it purports to be. It bears a time and date stamp, which is correct.

21.     Stipulated Trial Exhibit 14 is the body-worn camera footage MPD Lt. P.S. The footage is authentic, in that it is what it purports to be. It bears a time and date stamp, which is correct.

22.     Stipulated Trial Exhibit 15 is USCP CCTV depicting the Senate Carriage Door. The footage is authentic, in that it is what it purports to be. It bears a time and date stamp, which is correct.

23.     Appendix A contains a transcript of a conversation captured in Stipulated Trial Exhibits 8, 9, and 10. The portions that have been transcribed are accurate.

*Identification of Defendants*

24.     Image 1, Image 2, and Image 3 depict PATRICK MONTGOMERY on Capitol grounds on January 6, 2021.





*Image 1: PATRICK MONTGOMERY*                    *Image 2: PATRICK MONTGOMERY*



*Image 3: PATRICK MONTGOMERY*

     25.     Image 4 and Image 5 depict BRADY KNOWLTON on Capitol grounds on January 6, 2021.




*Image 4: BRADY KNOWLTON*                    *Image 5: BRADY KNOWLTON*

26.     Image 6 and Image 7 depict GARY WILSON on Capitol grounds on January 6, 2021.




*Image 6: GARY WILSON*                    *Image 7: GARY WILSON*

**MONTGOMERY, KNOWLTON, and WILSON's Conduct on January 6, 2021**

27.     On the morning of January 6, 2021, MONTGOMERY, KNOWLTON, and WILSON met at the Yours Truly hotel in Washington, D.C. When they left the hotel,

KNOWLTON was wearing a flak jacket, and MONTGOMERY and WILSON saw that he was wearing it.

28.     The group members discussed that, if there was violence against protestors by counter protesters in the afternoon, they did not want to be walking back alone in the evening, so they tried to stick together.

29.     After leaving the hotel, they walked to an area near the Washington Monument and the Ellipse to hear the speakers at the "Stop the Steal" rally. MONTGOMERY, KNOWLTON, and WILSON were present for some of President Trump's rally at the Ellipse. During that speech, President Trump told the crowd, "We fight like hell, and if you don't fight like hell, you're not going to have a country anymore," as well as, "And after this, we're going to walk down and I'll be there with you. We're going to walk down, we're going to walk down. Anyone you want, but I think right here, we're going to walk down to the Capitol – and we're going to cheer on our brave senators and congressmen and women, and we're probably not going to be cheering so much for some of them."

30.     By 2:01 p.m., MONTGOMERY, KNOWLTON, and WILSON had crossed into the restricted area on Capitol grounds. At that time, they were near the scaffolding that had been erected on the west front of the U.S. Capitol.

31.     At approximately 2:02 p.m., MONTGOMERY grabbed Officer D.H.'s baton, and tried to wrestle it away from him. Officer D.H. held onto the baton, and he and MONTGOMERY fell to the ground. While on the ground, Officer D.H. and MONTGOMERY attempted to wrestle control of the baton from each other, as shown in Image 8. KNOWLTON and WILSON were standing a few feet away from the conduct described in this paragraph when the conduct occurred.



*Image 8: Screenshot from Officer D.H.'s body-worn camera footage (Stipulated Trial Exhibit 1) showing MONTGOMERY (green jacket) and Officer D.H. (black gloves) attempting to gain control of Officer D.H.'s baton.*

32.     During this incident, MONTGOMERY kicked the officer in the chest, as depicted in Image 9, which is a screenshot from Officer D.H.'s body-worn camera footage. KNOWLTON and WILSON observed some of MONTGOMERY'S conduct with respect to Officer D.H.



*Image 9: Screenshot from Officer D.H.'s body-worn camera footage (Stipulated Trial Exhibit 1) showing MONTGOMERY kicking Officer D.H.*

33.     At approximately 2:28 p.m., MONTGOMERY, KNOWLTON, and WILSON ascended the Upper West Terrace Stairs with a mass of individuals, as captured in Image 10.



*Image 10: Screenshot from USCP CCTV footage (Stipulated Trial Exhibit 2) showing MONTGOMERY (green), KNOWLTON (red), and WILSON (yellow), ascending the Upper West Terrace Stairs.*

34.     At approximately 2:35 p.m., MONTGOMERY, KNOWLTON, and WILSON entered the United States Capitol Building through the Upper West Terrace Door, as captured in Image 11.



*Image 11: Screenshot from USCP CCTV footage (Stipulated Trial Exhibit 3) showing MONTGOMERY (green), KNOWLTON (red), and WILSON (yellow), entering the Capitol Building through the Upper West Terrace Door.*

35.     MONTGOMERY, KNOWLTON, and WILSON knew at the time they entered the Capitol that access to the Capitol Building was typically restricted in some capacity.

36.     As MONTGOMERY, KNOWLTON, and WILSON approached the Upper West Terrace Door, the exterior double doors were propped open, people were screaming loudly, and a loud alarm was sounding as people were streaming into the Capitol. There were signs on the inside of the doors stating, "EMERGENCY EXIT ONLY." Their entry through this doorway and adjacent hallway is reflected in Stipulated Trial Exhibits 3, 11, and 12.

37.     Stipulated Trial Exhibit 16, from time stamp 8:40 to 9:01, is footage recorded by an individual who entered via the Upper West Terrace door approximately 13 seconds before MONTGOMERY, KNOWLTON, and WILSON entered. The alarm is audible and individuals were chanting, "USA! USA!"

38.     If called to testify, Lieutenant D.M. would testify to the following:

    a.   On January 6, Lt. D.M. was a Sergeant at USCP.

b.  The Upper West Terrace Door was typically secured via magenetic locks, and would only open as part of an emergency egress for a fire.

c.  If the door was opened, a loud alarm would sound.

d.  At approximately 2:35 p.m., Lt. D.M. was standing in the interior of the Upper West Terrace Door, near the stairs leading up to the Rotunda, as depicted in Stipulated Trial Exhibit 16 at timestamp 9:00.

e.  Lt. D.M. and his fellow USCP officers were severely outnumbered by the individuals entering through the Upper West Terrace Door. As a result, he and his fellow officers could not safely deploy lethal force to stop the individuals.

f.  Lt. D.M. made the calculated decision to not escalate the situation, and decided instead to take a defensive position, for the safety of his fellow officers and the individuals who had entered.

39.  After entering the building through the Upper West Terrace Door, MONTGOMERY, KNOWLTON, and WILSON climbed the stairs to the second floor, and entered the Rotunda at approximately 2:36 p.m.

40.  MONTGOMERY, KNOWLTON, and WILSON exited the Rotunda at approximately 2:38 p.m. and climbed the stairs to the third floor.

41.  At approximately 2:40 p.m., MONTGOMERY, KNOWLTON, and WILSON were walking in the hallway on the third floor towards the Senate Gallery, at which point KNOWLTON stated, in substance, "We have a right to choose our electors. We're not going to have communist China choose them for us. We're not going to have the Democratic Party choose them for us." MONTGOMERY and WILSON were a few feet away from KNOWLTON when KNOWLTON made this statement.

42.     At approximately 2:43 p.m., MONTGOMERY, KNOWLTON, and WILSON were present outside the Senate Gallery, where several USCP officers wearing dark-colored blazers were present, and one was trying to lock the doors to the Senate Gallery. Other individuals yelled, "Don't you lock another door!" and "Grab the door!" as other individuals assaulted two of the USCP officers.

43.     Immediately after the other individuals assaulted USCP officers, MONTGOMERY, KNOWLTON, and WILSON entered the Senate Gallery. As described in Paragraph 7, the Senate Gallery had been evacuated before they entered. From the Senate Gallery, MONTGOMERY, KNOWLTON, and WILSON could see that the Senate Floor was empty.

44.     While inside the Senate Gallery, WILSON chanted "Treason! Treason! Treason!" with others, as captured in Stipulated Trial Exhibit 6 at time stamp 00:08. MONTGOMERY and KNOWLTON were inside the Senate Gallery during this chant and heard it.

45.     At approximately 2:47 p.m., WILSON took a black bag containing escape hoods,[1] which is government property, from the Senate Gallery, as depicted in Stipulated Trial Exhibit 5, at 14:47:39. KNOWLTON and MONTGOMERY were standing near WILSON when WILSON took the black bag from the Senate Gallery.

---

[1] An escape hood is protective equipment that a user puts over his head to prevent breathing in smoke or contaminated air.



*Image 12: Screenshot from Senate CCTV (Stipulated Trial Exhibit 5) showing WILSON taking the black bag containing escape hoods from the Senate Gallery.*

46.     After witnessing another individual jump down from the Senate Gallery to the Senate Floor, MONTGOMERY, KNOWLTON, and WILSON exited the Senate Gallery.

47.     MONTGOMERY, KNOWLTON, and WILSON went downstairs to the second floor of the Capitol, and proceeded through the Ohio Clock Corridor, where WILSON discarded the black bag with the escape hood. WILSON placed the bag on top of a piece of furniture, as depicted in Image 13.



*Image 13: Screenshot from USCP CCTV footage of the Ohio Clock Corridor (Stipulated Trial Exhibit 7) showing WILSON (yellow) discarding the black bag with escape hoods (blue) on top of a piece of furniture.*

48.     MONTGOMERY, KNOWLTON, and WILSON then proceeded to an area near Senate Minority Leader Charles Schumer's office, which was close to an entrance to the Senate Chamber, and spoke with USCP Officer B.M. This interaction was captured on the body-worn cameras of MPD Officers R.D. (Stipulated Trial Exhibit 8), M.H. (Stipulated Trial Exhibit 9), and C.R. (Stipulated Trial Exhibit 10), as well as CCTV video (Stipulated Trial Exhibit 13, without audio). Appendix A contains a transcript of the interaction.



*Image 14: Screenshot from Officer M.H.'s body-worn camera footage (Stipulated Trial Exhibit 9) showing KNOWLTON (red), MONTGOMERY (green), and WILSON (yellow) speaking with USCP Officer B.M. (blue) outside of Senator Schumer's office.*

49.     If called to testify, Officer B.M. would testify to the following:

a.  Officer B.M. was assigned as a Senate Chamber Officer on January 6, 2021.

b.  At approximately 2:49 p.m., Officer B.M. was standing in front of Senator Schumer's office, near an entrance to the Senate Floor. In that area, there were clear indications that the Senate Floor was close-by, such as signs and pamphlets that said "Senate" and police presence. Officer B.M.'s assignment was to prevent anyone from entering the Senate from that area.

c.  Because USCP radio communication was down, Officer B.M. believed that the Senators were inside the Senate Chamber.

d.  Around this time, a number of individuals confronted Officer B.M. with the intention of bypassing him to access the Senate Chamber.

e.  All the individuals in that area not associated with law enforcement had circumvented USCP security measures and were not authorized to be inside the

Capitol Building. As a result, Officer B.M. did not know whether they were armed.

f.   Officer B.M. reviewed the body-worn cameras of MPD Officers R.D. (Stipulated Trial Exhibit 8), M.H. (Stipulated Trial Exhibit 9), and C.R. (Stipulated Trial Exhibit 10) and identified himself in each exhibit. These exhibits comport with his recollection of the confrontation.

g.   Officer B.M. recalled that MONTGOMERY, KNOWLTON, and WILSON were more aggressive than the other rioters he had encountered on that day.

h.   KNOWLTON said to Officer B.M., "We're with you guys." Officer B.M. did not interpret KNOWLTON's statement as actual sympathy with the police. He believed that if KNOWLTON was really with the police, then KNOWLTON should not have been breaking the law. Officer B.M. believed that KNOWLTON's intention was to confront the Senators inside the Senate Chamber.

i.   Officer B.M. believed that when MONTGOMERY said to him, "All you gotta do is step out of the way," MONTGOMERY meant he wanted the police to allow the rioters into the Senate Chamber to confront the Senators.

j.   Officer B.M. believed that MONTGOMERY, KNOWLTON, and WILSON eventually left the area once there was increased police presence, and because it was clear that he was not going to let them through into the Senate Chamber.

50.    At 2:52 p.m., immediately before exiting, KNOWLTON spoke with two police officers, as depicted in Stipulated Trial Exhibit 14. MONTGOMERY and KNOWLTON were standing nearby.  One officer asked, "If everyone wants to get out?" An individual whose face

was obstructed responded, "Yes." The second officer said, "That way," and pointed. MONTGOMERY, KNOWLTON, and WILSON walked in the direction that the second officer pointed.

51.     MONTGOMERY, KNOWLTON, and WILSON exited the Capitol building at approximately 2:53 p.m., as depicted in Stipulated Trial Exhibit 15.

### III.     THE OFFENSES

52.     With respect to Count Ten, which charges MONTGOMERY, KNOWLTON, and WILSON with Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), each defendant reserves the right to appeal this charge if the Court finds sufficient facts to convict him under the current interpretation of the statute as set forth in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), *cert. granted*, 2003 WL 8605748 at *1 (U.S. Dec. 13, 2023) (No. 23-5572), and *United States v. Robertson*, No. 22-3062 (D.C. Cir. Oct. 20, 2023), prior to any decision by the Supreme Court in *Fischer*. MONTGOMERY, KNOWLTON, and WILSON each agrees that, without waiving any arguments set forth in Defendants' Motion to Dismiss Count Ten of the Third Superseding Indictment (ECF 151), the Court may find that the government has met its burden of establishing all of the elements of 18 U.S.C. § 1512(c)(2) and may find each defendant guilty on Count Ten. However, none of the foregoing should be construed in any way as a waiver by MONTGOMERY, KNOWLTON, or WILSON of his right to appeal a conviction under 18 U.S.C. § 1512(c)(2), including, in the event that the Supreme Court reverses the D.C. Circuit's opinion in *Fischer* or any other case consolidated with *Fischer* on appeal.

53.     With respect to the remaining charged offenses enumerated in Section I of this document, without waiving any arguments set forth in Defendant Montgomery's Motion to Dismiss Superseding Indictment for Constitutional Retaliation (ECF 150), Defendants' Joint

Motion to Dismiss Counts Three, Five, and Six of the Superseding Indictment (ECF 152), Defendant Montgomery's Motion to Dismiss on First Amendment Grounds (ECF 154), and Defendant Montgomery's Motion to Dismiss All Counts of the Case Due to Government's Criminal Mishandling, Concealment, or Destruction of Evidence, Obstruction of Justice, and Spoliation of Evidence (ECF 165), and without waiving defendants' objection to the Court's denial of those motions, the parties agree that if the Court finds the existence of these facts beyond a reasonable doubt, this evidence would establish each and every element of those other charged offenses enumerated in Section I of this document.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:    */s/ Kelly E. Moran*
KELLY E. MORAN
Assistant United States Attorney
NY Bar No. 5776471
U.S. Attorney's Office for the
District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
202-740-4690
kelly.moran@usdoj.gov

*/s/ Carolina Nevin*
CAROLINA NEVIN
Assistant United States Attorney
NY Bar No. 5226121
U.S. Attorney's Office for the
District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
202-803-1612
carolina.nevin@usdoj.gov

APPENDIX A

| 14:49:50 | Officer B.M. | They're everywhere. |
|---|---|---|
| 14:49:51 | MPD Officer | No I know, but they're going up this way. [unintelligible] |
| 14:49:52 | KNOWLTON | What's your bigger job [unintelligible]? |
| 14:49:53 | Individual (red hat) | Hey, you look like a pedophile, too. |
|  | KNOWLTON | No, dude, no. |
| 14:49:56 | MPD Officer | Lock it down, right here. Lock it down. |
| 14:50:00 | Individual (red hat) | [unintelligible] all the way, everywhere [unintelligible]? |
| 14:50:01 | KNOWLTON | No, we've already been up [unintelligible]. |
| 14:50:04 | Individual (red hat) | If only y'all knew who y'all worked for. No, we're not letting you – this is our house. |
| 14:50:07 | Officer B.M. | [unintelligible] if you like us [unintelligible] |
| 14:50:09 | KNOWLTON | This is not about us. This is bigger than me, it's bigger than you. It's about this – everyone's right to self-government. |
| 14:50:15 | Individual (bald) | [unintelligible] storm the Capitol [unintelligible] |
| 14:50:20 | KNOWLTON | We're with you guys. You think these people in this building would fight for you? |
| 14:50:23 | MONTGOMERY | We're the ones sticking up for you. We're on your side. You're on our side. What are you guys doing? |
| 14:50:28 | Officer B.M. | We're here doing our job. |
| 14:50:28 | Individual (bald) | So were the Nazis! So were the Nazis! |
| 14:50:28 | MONTGOMERY | I know! But you gotta stop doing your job sometime and start being American. You gotta quit doing your job and be an American. |
| 14:50:33 | Individual (Q shirt) | God bless you guys. |
| 14:50:33 | KNOWLTON | This is a moment in history [unintelligible]. Right now is a moment in history. We don't wanna push through there. |
| 14:50:36 | Individual (bald) | How many times has the Capitol been stormed? [unintelligible] |
| 14:50:39 | Individual (Q shirt) | We're all on the same side here. Might as well just  show us where to go. |
| 14:50:43 | KNOWLTON | We do not wanna push through there. What side [unintelligible]? [unintelligible] try right now. [unintelligible] heavy on you, brother. |
| 14:50:43 | MONTGOMERY | All you gotta do is step outta the way. |
| 14:50:46 | Individual (Q shirt) | They're doing their job. I think we're gonna have to force them. They have to do their job. They have to. |
| 14:50:47 | MONTGOMERY | Just step outta the way. That's all you gotta do. |
| 14:50:50 | KNOWLTON | You have a moment right now. [unintelligible] All you gotta do is step aside. You're not getting in trouble. Stand down. |
| 14:50:59 | Individual (bald) | Stand down. |
| 14:51:00 | KNOWLTON | For the love of your country. |

| 14:51:00 | Individual (Q shirt) | What happens if we push? Do you back up? |
|---|---|---|
| 14:51:03 | Officer B.M. | [unintelligible] |
| 14:51:05 | Individual (Q shirt) | We're not gonna push hard. |
| 14:51:06 | MONTGOMERY | [unintelligible] It's getting everybody's attention! [unintelligible] |
| 14:51:10 | Individual (bald) | Why can't we go in? |
| 14:51:11 | MONTGOMERY | Yeah! [unintelligible] This is our house! This is our house! |
| 14:51:12 | KNOWLTON | This *is* happening. Our vote doesn't matter, so we came here for change! |
| 14:51:13 | MONTGOMERY | This is our house, we pay your salary. [unintelligible] blue lives matter. |
| 14:51:18 | Individual (Q shirt) | We want our country back. You guys should be out arresting the Vice President right now. |
| 14:51:23 | WILSON | We came all the way from our job to do your job, and the freaking Senators' job. |

## DEFENDANT'S ACCEPTANCE

I, PATRICK MONTGOMERY, have read the foregoing Statement of Facts for Stipulated Trial, and I have discussed this proffer fully with my attorney, John Pierce. I fully understand this proffer, and I accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 2/14/24

PATRICK MONTGOMERY
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read every page of this Statement of Facts with my client, PATRICK MONTGOMERY, and fully discussed it with my client.

Date: 2/14/24

John Pierce
Attorney for Defendant PATRICK MONTGOMERY

## DEFENDANT'S ACCEPTANCE

I, BRADY KNOWLTON, have read the foregoing Statement of Facts for Stipulated Trial, and I have discussed this proffer fully with my attorney, Brent Mayr. I fully understand this proffer, and I accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 2/13/24

_____
BRADY KNOWLTON
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read every page of this Statement of Facts with my client, BRADY KNOWLTON, and fully discussed it with my client.

Date: 2/13/2024

_____
Brent Mayr
Attorney for Defendant BRADY KNOWLTON

27

### DEFENDANT'S ACCEPTANCE

I, GARY WILSON, have read the foregoing Statement of Facts for Stipulated Trial, and I have discussed this proffer fully with my attorney, David Benowitz. I fully understand this proffer, and I accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 2/13/2024

GARY WILSON
Defendant


### ATTORNEY'S ACKNOWLEDGMENT

I have read every page of this Statement of Facts with my client, Gary WILSON, and fully discussed it with my client.

Date: 2/14/24

David Benowitz
Attorney for Defendant GARY WILSON